**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

CASE NO.: 2:09-CV-01187-JFC )
)
PETER W. KEIFER and RUTH C. )
KEIFER, Husband and Wife, )
) CONSOLIDATED AT:
Plaintiffs, ) CASE NO.: 2:09-CV-01558-JFC
)
vs. )
)
REINHART FOODSERVICES, LLC, )
REINHART TRANSPORTATION, LLC, )
SCOTT MATHENEY, WERNER )
ENTERPRISES, INC. a/k/a & d/b/a )
WERNER TRUCKING, and JOEL )
BALTHAZAR, )
)
Defendants. )

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

CASE NO.: 2:09-CV-01558-JFC )
)
SCOTT E. MATHENEY, )
)
Plaintiff, )
)
vs. )
)
JOEL BALTHAZAR and WERNER )
ENTERPRISES, INC. t/d/b/a WERNER )
TRUCKING, )
)
Defendants. )

**MEMORANDUM OPINION**

**CONTI, District Judge.**

**I. Introduction**

This is a diversity action arising out of a motor vehicle accident occurring in the early

morning hours of April 23, 2008, along the Pennsylvania Turnpike ("Turnpike"). Pending

before the court are three separate motions for summary judgment filed by the parties pursuant to Federal Rule of Civil Procedure 56. ECF Nos. 65, 88 & 91.

## II. Background

### A. The Parties

At all times relevant to this action, Joel Balthazar ("Balthazar") was an adult individual residing in Opa-Locka, Florida. ECF No. 1 ¶ 2. He was employed by Werner Enterprises, Inc. ("Werner"), which maintains its principal place of business in Omaha, Nebraska. *Id.* ¶¶ 3, 10. Scott E. Matheney ("Matheney") was an adult individual residing in Kent, Ohio. *Id.* ¶ 1. He was employed by Reinhart Foodservices, LLC ("Reinhart"), which maintains its principal place of business in Wisconsin. 09-CV-1187, ECF No. 1 ¶¶ 2-4. Reinhart has an office located in Mount Pleasant, Pennsylvania. *Id.* ¶ 2. Peter W. Keifer ("Keifer") and Ruth C. Keifer ("Ruth") are married to each other and are residents of Cumberland, Maryland. *Id.* ¶ 1. At all relevant times, Keifer was employed by Roadway Express, Inc. ("Roadway Express"), which maintained its principal place of business in Overland Park, Kansas. ECF No. 1 ¶ 5. Roadway Express later merged with Yellow Transportation, Inc., to form YRC Worldwide Enterprise Services ("YRC"). 09-CV-1187, ECF No. 31 ¶ 8.

### B. The Accident

On the morning of April 23, 2008, Balthazar was hauling a cargo carrier on a flat-bed trailer attached to a tractor owned by Werner. ECF Nos. 90 ¶ 1; 106 ¶ 1. Balthazar, who was a new driver at the time, was accompanied by his trainer, Michael Warnick ("Warnick"). ECF No. 97 ¶ 14. Balthazar was driving the tractor-trailer westward on the Turnpike near Cranberry Township, which is located in Butler County, Pennsylvania.[1] *Id.* ¶ 1. Balthazar briefly pulled the tractor-trailer onto a pull-off area along the road in order to defrost his windshield. ECF Nos.

---

[1] This portion of the Turnpike is also known as Interstate 76. ECF No. 1 ¶ 10.

67 ¶ 5; 73 ¶ 5. After clearing the windshield, he drove the tractor-trailer back onto the Turnpike and proceeded to drive down the right westbound lane. ECF Nos. 90 ¶ 3; 106 ¶ 3.

As Balthazar was driving the tractor-trailer back onto the Turnpike, Matheney was operating a tractor-trailer owned by Reinhart in the right westbound land. ECF Nos. 90 ¶ 4; 106 ¶ 4. The tractor driven by Matheney was pulling two fully-loaded tandem trailers at the rate of 65 miles per hour ("mph"). *Id.* Shortly before 4:30 A.M. on April 23, 2008, the front of Matheney's tractor collided with the rear end of the trailer being pulled by Balthazar. ECF Nos. 90 ¶ 5; 106 ¶ 5. The trailers attached to Matheney's tractor rolled onto their left sides. ECF No. 90 ¶ 8; 106 ¶ 8. The second trailer slid into the left lane of the Turnpike, causing both westbound lanes to be blocked. ECF Nos. 90 ¶ 9; 106 ¶ 9. Warnick was asleep inside of Werner's tractor at the time of the accident. ECF No. 97 ¶ 16.

When the collision occurred, Keifer was traveling westward on the Turnpike in a tractor owned by Roadway Express. ECF Nos. 90 ¶ 13; 106 ¶ 13. His tractor was pulling a fully-loaded trailer weighing between 25,000 and 30,000 pounds at the approximate rate of 62 mph. ECF Nos. 90 ¶¶ 13-14; 106 ¶¶ 13-14. The tractor driven by Keifer crashed into the second trailer owned by Reinhart, which was blocking both westbound lanes of the Turnpike. ECF Nos. 90 ¶ 17; 106 ¶ 17. Balthazar, Warnick and Matheney did not observe this second collision. ECF Nos. 90 ¶ 20; 106 ¶ 20. Matheney and Keifer both sustained physical injuries. ECF Nos. 90 ¶¶ 19, 21; 106 ¶¶ 19, 21. Keifer was trapped inside of his vehicle until he was freed by emergency medical personnel and transported to the University of Pittsburgh Medical Center ("UPMC") for treatment. ECF Nos. 90 ¶ 19; 106 ¶ 19.

## C. Procedural History

Keifer and Ruth commenced an action against Matheney, Reinhart, Balthazar and Werner on September 1, 2009, alleging that Keifer's injuries was caused by the negligent driving of Matheney and Balthazar. 09-CV-1187, ECF No. 1. The claims asserted against Reinhart and Werner were premised not only on a theory of vicarious liability, but also on the idea that they negligently failed to train, monitor and supervise Matheney and Balthazar. *Id.* ¶ 12. The Keifers sought compensatory and punitive damages.

On October 9, 2009, Balthazar and Werner filed a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), contending that the allegations set forth by the Keifers were insufficient to justify an award of punitive damages. 09-CV-1187, ECF Nos. 6; 7. Balthazar and Werner filed an answer that same day. 09-CV-1187, ECF No. 8. Included within their answer were cross-claims against Matheney and Reinhart for indemnity, contribution and negligence. *Id.* ¶¶ 28-37. Matheney and Reinhart filed their own motion to dismiss on November 2, 2009, arguing that an award of punitive damages could not be based on the allegations made by the Keifers. 09-CV-1187, ECF Nos. 18; 19.

Matheney commenced a separate action against Balthazar, Werner, Keifer and YRC on November 24, 2009, alleging that his injuries were attributable to the negligent driving of Balthazar and Keifer. ECF No. 1. He averred that Werner and YRC were vicariously liable for the actions of Balthazar and Keifer, and that Werner was directly liable for permitting Balthazar to operate a tractor-trailer without appropriate training, monitoring or supervision. *Id.* ¶¶ 19-20. The motions to dismiss pending in the other action were denied without prejudice on December 11, 2009. On December 14, 2009, Balthazar and Werner filed a motion to consolidate the two cases pursuant to Federal Rule of Civil Procedure 42(a)(2). 09-CV-1187, ECF No. 27. The motion was filed in the action that had been commenced by the Keifers. Eight days later,

Matheney and Reinhart filed answers to the complaint filed by the Keifers and the cross-claims filed by Balthazar and Werner. 09-CV-1187, ECF Nos. 28 & 29. Their answer to the original complaint included cross-claims against Balthazar and Werner for contribution, indemnity and negligence. 09-CV-1187, ECF No. 29 ¶¶ 33-39. On January 12, 2010, Keifer and YRC filed an answer to Matheney's complaint and asserted cross-claims against Balthazar and Werner for contribution and indemnity. ECF No. 7. Balthazar and Werner similarly answered Matheney's complaint on January 25, 2010, and asserted cross-claims against Keifer and YRC for indemnity and contribution. ECF No. 8. Balthazar and Werner filed a motion to consolidate in Matheney's action on February 2, 2010, contending that the pending cases would be more efficiently managed as a single action. ECF No. 14.

On February 26, 2010, YRC sought leave to intervene pursuant to Federal Rule of Civil Procedure 24, averring that, as the successor to Roadway Express, it was entitled under Maryland law to recover the costs incurred by Roadway Express in connection with the accident. 09-CV-1187, ECF No. 31. YRC sought compensation for the property damage incurred by Roadway Express and the amount of workers' compensation benefits that Roadway Express paid to Keifer. *Id.* ¶¶ 4-8. The motion to intervene was granted on March 24, 2010, and YRC filed intervenor complaints in both actions one day later. ECF No. 28; 09-CV-1187, ECF Nos. 33 & 34. The motions to consolidate filed by Balthazar and Werner were granted in an order dated April 8, 2010, and the original action commenced by the Keifers was closed. ECF No. 19; 09-CV-1187, ECF No. 35. Balthazar and Werner answered YRC's intervenor complaint on April 22, 2010, and asserted cross-claims against Matheney and Reinhart for indemnity and contribution. ECF No. 26 ¶¶ 19-20. On April 27, 2010, Matheney and Reinhart filed a separate

answer to YRC's intervenor complaint and asserted cross-claims against Balthazar and Werner for indemnity and contribution. ECF No. 30 ¶¶ 25-26.

Matheney and Reinhart filed a motion for partial summary judgment on May 11, 2011, contending that Balthazar was negligent *per se* in driving his tractor-trailer below the minimum speed of 50 mph at the time of the first collision. ECF No. 65. On August 17, 2011, Keifer and YRC moved for summary judgment with respect to all the claims asserted against them, arguing that there was no evidence suggesting that Keifer was negligent, or that Matheney's injuries were caused by the second collision. ECF No. 88. Reinhart filed a motion for partial summary judgment on August 22, 2011, contending that Keifer and YRC could not show that it was negligent in its training, monitoring and supervision of Matheney. ECF No. 91. That same day, Balthazar and Werner moved for partial summary judgment with respect to the Keifers' claims for punitive damages and all claims pertaining to Werner's training, monitoring and supervision of Balthazar. ECF No. 95.

In a stipulation filed on September 6, 2011, the Keifers withdrew their claims for punitive damages against Balthazar and Werner and all claims relating to Werner's training, monitoring and supervision of Balthazar. ECF No. 101 ¶ 2. Balthazar and Werner withdrew their motion for partial summary judgment concerning the claims asserted by the Keifers. *Id.* ¶ 1. The parties stipulated that Balthazar was acting within the scope of his employment at the time of the accident, and that Werner was vicariously liable for any torts committed by Balthazar in connection with the accident. *Id.* ¶ 3.

On September 12, 2011, Matheney filed a motion for voluntary dismissal pursuant to Federal Rule of Civil Procedure 41(a)(2), seeking to withdraw his claims against Keifer and YRC. ECF No. 102. In a stipulation filed on September 14, 2011, Matheney withdrew his

claims against Werner relating to the training, monitoring and supervision of Balthazar. ECF No. 103 ¶¶ 2-3. Balthazar and Werner withdrew their motion for partial summary judgment concerning the claims asserted by Matheney. *Id.* ¶ 1. It was agreed that Balthazar was acting within the scope of his employment at the time of the accident, and that Werner was vicariously liable for Balthazar's negligent conduct in the event that liability for negligence could be established. *Id.* ¶ 4. The court granted Matheney's motion for voluntary dismissal on September 16, 2011, and dismissed his claims against Keifer and YRC. ECF No. 108.

The motions for summary judgment filed by Matheney, Reinhart, Keifer and YRC remain before the court and are the subject of this memorandum opinion. ECF Nos. 65; 88; 91. The stipulations do not preclude these parties from arguing that Balthazar was negligent in failing to awaken Warnick before pulling Werner's tractor-trailer back onto the Turnpike. ECF No. 101 ¶ 4; ECF No. 103 ¶ 3.

## III. Standard of Review

Summary judgment may only be granted where the moving party shows that there is no genuine dispute as to any material fact, and that a judgment as a matter of law is warranted. FED. R. CIV. P. 56(a). Pursuant to Federal Rule of Civil Procedure 56, the court must enter summary judgment against a party who fails to make a showing sufficient to establish an element essential to his or her case, and on which he or she will bear the burden of proof at trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). In evaluating the evidence, the court must interpret the facts in the light most favorable to the nonmoving party, drawing all reasonable inferences in his or her favor. *Watson v. Abington Twp.*, 478 F.3d 144, 147 (3d Cir. 2007). The burden is initially on the moving party to demonstrate that the evidence contained in the record does not create a genuine issue of material fact. *Conoshenti v. Pub. Serv. Elec. & Gas Co.*, 364 F.3d 135, 140 (3d

Cir. 2004).  A dispute is "genuine" if the evidence is such that a reasonable trier of fact could render a finding in favor of the nonmoving party.  *McGreevy v. Stroup*, 413 F.3d 359, 363 (3d Cir. 2005).  Where the nonmoving party will bear the burden of proof at trial, the moving party may meet its burden by showing that the admissible evidence contained in the record would be insufficient to carry the nonmoving party's burden of proof.  *Celotex Corp.*, 477 U.S. at 322. Once the moving party satisfies its burden, the burden shifts to the nonmoving party, who must go beyond his or her pleadings and designate specific facts by the use of affidavits, depositions, admissions or answers to interrogatories showing that there is a genuine issue of material fact for trial.  *Id.* at 324.  The nonmoving party cannot defeat a well-supported motion for summary judgment by simply reasserting unsupported factual allegations contained in his or her pleadings. *Williams v. Borough of West Chester*, 891 F.2d 458, 460 (3d Cir. 1989).

## IV.    Discussion

Subject-matter jurisdiction in this case is predicated on the diverse citizenship of the parties.  A federal court sitting in diversity must apply the choice of law rules applicable in the forum state.  *Klaxon v. Stentor Electric Mfg. Co., Inc.*, 313 U.S. 487, 496-497 (1941).  In *Griffith v. United Air Lines, Inc.*, 203 A.2d 796, 805 (Pa. 1964), the Pennsylvania Supreme Court abandoned the traditional *lex loci delicti* rule "in favor of a more flexible rule which permits analysis of the policies and interests underlying the particular issue before the court."  The fact that the accident at issue occurred in Pennsylvania does not automatically mean that this case is controlled by Pennsylvania law.  *Budget Rent-A-Car Sys., Inc. v. Chappell*, 407 F.3d 166, 177 n.9 (3d Cir. 2005)(explaining that the "chance occurrence" of an accident in Pennsylvania involving only domiciliaries of other states did not provide Pennsylvania with "an interest in applying its law").  Nevertheless, the *lex loci delicti* rule still "supplies the substantive law"

governing a case in which no other jurisdiction's interests would be impaired by the failure to apply its law. *Garcia v. Plaza Oldsmobile, Ltd.*, 421 F.3d 216, 220 (3d Cir. 2005). The parties briefed the substantive issues in this case in accordance with Pennsylvania law without relying on legal precepts applicable in the six interested jurisdictions. The court is aware of no state interests that would be impaired by its failure to apply the law of Florida, Nebraska, Ohio, Wisconsin, Maryland or Kansas.[2] Therefore, the *lex loci delicti* rule applies, and the legal issues disputed in this case will be considered under Pennsylvania law. *Budget Rent-A-Car Sys., Inc.*, 407 F.3d at 170; *Miller v. Gay*, 470 A.2d 1353, 1355-56 (Pa.Super.Ct. 1983).

### A.     Negligence *Per Se*

"Negligence" is generally defined as "the failure to observe, for the protection of another's interest, such care and precaution as the circumstances demand, or the failure to do what a reasonable and prudent person would ordinarily have done under the circumstances." *Howard v. Blalock Elec. Serv., Inc.*, 742 F.Supp.2d 681, 695 n.6 (W.D.Pa. 2010); *Witt v. Norfe, Inc.*, 725 F.2d 1277, 1278 (11th Cir. 1984); *Seaboard Coast R.R. Co. v. Griffis*, 381 So.2d 1063, 1065 (Fla.Dist.Ct.App. 1979). In order to recover damages from a defendant on a theory of negligence, a plaintiff must show that: (1) the defendant was under a "legally recognized duty or obligation" to act in a certain manner; (2) the defendant breached that "duty or obligation" by failing to act in accordance with that manner; (3) there was a "causal connection" between the defendant's breach and the invasion of an interest enjoyed by the plaintiff; and (4) the plaintiff was actually harmed or injured by the invasion of that interest. *Eckroth v. Pa. Elec., Inc.*, 12 A.3d 422, 427 (Pa.Super.Ct. 2010). The motion for partial summary judgment filed by Matheney and Reinhart concerns only the first and second of these four elements. ECF No. 65.

---

[2] Even though all the parties are citizens of other states, Pennsylvania maintains an interest in enforcing any statutory provision prescribing a "rule of the road." *Cipolla v. Shaposka*, 267 A.2d 854, 856 n.2 (Pa. 1970).

Matheney and Reinhart contend that Balthazar was negligent *per se* in operating his tractor-trailer below the minimum speed permitted on the Turnpike. *Id.* ¶¶ 4-7.

The law concerning negligence *per se* "is so well established as to be beyond cavil." *C.C.H. v. Phila. Phillies, Inc.*, 940 A.2d 336, 347 n.17 (Pa. 2008). Pennsylvania courts have consistently held that an individual's violation of the motor vehicle code constitutes negligence *per se*. *Gaskill v. Mellela*, 18 A.2d 455, 457 (Pa. 1941); *Jinks v. Currie*, 188 A. 356, 358 (Pa. 1936); *Behney v. Bolich*, 986 A.2d 944, 946 n.1 (Pa.Commw.Ct. 2009); *Lahr v. City of York*, 972 A.2d 41, 49-53 (Pa.Commw.Ct. 2009). In this context, the statutory provision at issue establishes the applicable "duty" owed by the defendant, and the violation of that provision constitutes a breach of the defendant's "duty" of care. *Cabiroy v. Scipione*, 767 A.2d 1078, 1079 (Pa.Super.Ct. 2001). Although a finding of negligence *per se* satisfies the first two elements of a plaintiff's cause of action, it does not encompass the third and fourth elements. A plaintiff proceeding on a theory of negligence *per se* must further demonstrate that his or her injuries were caused by the defendant's violation of a statutory mandate. *Lux v. Gerald E. Ort Trucking, Inc.*, 887 A.2d 1281, 1288 (Pa.Super.Ct. 2005). A defendant's violation of a statutory "duty" does not preclude consideration of the plaintiff's comparative negligence in bringing about his or her own injuries.[3] *Jenkins v. Wolf*, 911 A.2d 568, 571 (Pa.Super.Ct. 2006).

In support of their motion for partial summary judgment, Matheney and Reinhart rely on two distinct sources of Pennsylvania law. The first is 75 PA. CONS. STAT. § 3364, which provides:

### § 3364. Minimum speed regulation

---

[3] Under Pennsylvania law, a plaintiff's "contributory negligence" does not foreclose the recovery of damages "where such negligence was not greater than the causal negligence of the defendant or defendants against whom recovery is sought," but the amount of damages awarded must be "diminished in proportion to the amount of negligence attributed to the plaintiff." 42 PA. CONS. STAT. § 7102(a).

**(a) Impeding movement of traffic prohibited.**—Except when reduced speed is necessary for safe operation or in compliance with law, no person shall drive a motor vehicle at such a slow speed as to impede the normal and reasonable movement of traffic.

**(b) Slow moving vehicle to drive off roadway.**—Except when reduced speed is necessary for safe operation or in compliance with law, whenever any person drives a vehicle upon a roadway having width for not more than one lane of traffic in each direction at less than the maximum posted speed and at such a slow speed as to impede the normal and reasonable movement of traffic, the driver shall, at the first opportunity when and where it is reasonable and safe to do so and after giving appropriate signal, drive completely off the roadway and onto the berm or shoulder of the highway. The driver may return to the roadway after giving appropriate signal only when the movement can be made in safety and so as not to impede the normal and reasonable movement of traffic.

**(c) Establishment of minimum speed limits.**—At any other time when the department or local authorities under their respective jurisdictions determine on the basis of an engineering and traffic investigation that slow speeds on any highway or part of a highway impede the normal and reasonable movement of traffic, the department or such local authority may determine and declare a minimum speed limit below which no person shall drive a vehicle except when necessary for safe operation or in compliance with law. The minimum limit shall be effective when posted upon appropriate fixed or variable signs.

75 PA. CONS. STAT. § 3364 (boldface type in original). Matheney and Reinhart also rely on 67 PA. CODE § 601.4, which was promulgated by the Pennsylvania Turnpike Commission ("Commission"). Section 601.4 provides:

**§ 601.4. Speed limits.**
(a) A vehicle shall be limited to a maximum posted speed limit. The minimum speed for a vehicle on the Turnpike is 15 miles per hour below the posted speed limit, except as noted otherwise.
(b) The Commission, in cooperation with the State Police, has the authority to temporarily reduce speed limits on a part of the Turnpike System where hazardous conditions warrant the reduction in speed or where the reduction is necessary for construction or maintenance operations.

67 PA. CODE § 601.4 (boldface type in original). It is undisputed that the applicable speed limit was 65 mph. ECF No. 66 at 3; ECF No. 76 at 6. Matheney and Reinhart contend that Balthazar

was negligent *per se* in operating his tractor-trailer slower than 50 mph immediately before the first collision. ECF No. 65 ¶¶ 4-7.

Balthazar testified that he pulled his tractor-trailer off the Turnpike in order to defrost safely his windshield. ECF No. 68-2 at 9; Balthazar Dep. at 46. He stated that he drove the vehicle back onto the Turnpike after checking for approaching vehicles and seeing "no lights." ECF No. 68-2 at 12; Balthazar Dep. at 68. Balthazar explained that, after coming back onto the Turnpike, his tractor-trailer was traveling in "fifth gear" at the rate of 35 mph. ECF No. 68-2 at 15; Balthazar Dep. at 99. He testified that he activated his four-way flashers prior to leaving and reentering the Turnpike, and that they were operating at the time of the collision. ECF No. 98-4 at 4, 8; Balthazar Dep. at 65, 159. A police report prepared in the aftermath of the accident indicated that the four-way flashers on Balthazar's tractor-trailer continued to operate after the arrival of law enforcement personnel. ECF No. 111-3 at 26.

Stephen W. Rickard ("Rickard"), a retired member of the Pennsylvania State Police ("PSP") and a former instructor for the Pennsylvania State Police Academy, testified that section 601.4 was simply a directive prohibiting vehicles that could not maintain the minimum speed of 50 mph from traveling on the Turnpike. ECF No. 98-12 at 13-14; Rickard Dep. at 120-121. He explained that section 601.4 did not provide an independent basis for citing a motorist who was traveling below the minimum speed. *Id.* In a subsequent affidavit dated July 29, 2011, Rickard stated that motorists were permitted to operate vehicles on the Turnpike slower than 40 mph provided that they had their four-way flashers activated. ECF No. 98-10 ¶ 11; Rickard Aff. ¶ 11. He observed that "it would be unusual to travel on any interstate highway in Pennsylvania and not see a vehicle traveling slower than 40 mph." *Id.* ¶ 8. The record contains a photograph

depicting a sign on the Turnpike which reads, "USE FLASHERS BELOW 40 MPH." ECF No. 83-2 at 22.

Trooper Thomas Rubino ("Rubino"), a responding officer at the scene of the accident, testified that he did not cite Balthazar for violating section 3364 because the four-way flashers on Werner's tractor-trailer were activated while the vehicle was traveling below the applicable minimum speed. ECF No. 98-11 at 19; Rubino Dep. at 105. Rubino explained that the tractor-trailer was properly accelerating prior to the collision, leaving him with no reason to conclude that Balthazar was operating it in such a way "as to impede the normal and reasonable movement of traffic." ECF No. 98-11 at 19-20; Rubino Dep. at 105-106; 75 PA. CONS. STAT. § 3364(a). After the accident, Matheney received citations for careless driving resulting in serious bodily injury,[4] causing an accident involving an overturned vehicle,[5] and operating a vehicle containing a prohibited radar detection device.[6] ECF No. 111-3 at 13-22. Matheney pleaded guilty to the charge involving the radar detection device and paid a fine in the amount of $121.50. ECF No. 111-2 at 51; Matheney Dep. at 126; ECF No. 111-5 at 10. The remaining two charges were dismissed by a district justice by reason of Balthazar's failure to appear and testify at a scheduled hearing. ECF No. 111-4 at 38-46.

Although Balthazar was operating his tractor-trailer on the Turnpike at the rate of 35 mph at the time of impact, the record provides no basis for concluding as a matter of law that he was negligent *per se*. Matheney and Reinhart point to nothing in the record which suggests that the alleged minimum speed limit of 50 mph was posted along the Turnpike at the time of the accident. The plain language of section 3364(c) provides that a prescribed minimum speed limit "shall be effective when posted upon appropriate fixed or variable signs." 75 PA. CONS. STAT. §

---

[4] 75 PA. CONS. STAT. § 3714(c).
[5] 75 PA. CONS. STAT. § 3716(a).
[6] 75 PA. CONS. STAT. § 4107(b)(2).

3364(c). The record not only lacks evidence indicating that signs conveyed the alleged

minimum speed limit of 50 mph to motorists traveling on the Turnpike on April 23, 2008, but

also contains affirmative evidence establishing the existence of signs *permitting* motorists to

travel below the rate of 40 mph with their four-way flashers activated. ECF No. 83-2 at 22.

Even if it is assumed (contrary to the evidentiary record) that section 601.4 establishes a

minimum speed at which drivers can operate vehicles on the Turnpike, rather than simply a

criterion that vehicles must meet in order to be suitable for Turnpike travel, Matheney and

Reinhart cannot establish that the minimum speed limit was "effective" (*i.e.*, "posted upon

appropriate fixed or variable signs") on the date of the crash. 75 PA. CONS. STAT. § 3364(c);

*Commonwealth v. Cogan*, 492 A.2d 1388, 1390 (Pa.Super.Ct. 1985).

   Given that the alleged minimum speed limit relied upon by Matheney and Reinhart was

not "effective" on the date of the accident, Balthazar was in violation of section 3364 only if he

"was operating his vehicle at such a slow speed that it was an impediment to the normal and

reasonable movement of traffic." *Commonwealth v. Robbins*, 657 A.2d 1003, 1004

(Pa.Super.Ct. 1995). This standard is not satisfied where a driver travels slowly for only a brief

period of time. *Commonwealth v. Lana*, 832 A.2d 527, 529 (Pa.Super.Ct. 2003)(finding a traffic

stop based on section 3364 to be illegal where a police officer stopped a slow-moving motorist

after following him "for a distance of just one block, barely enough time in which to fasten one's

seat belt and adjust the mirrors"). In an expert report dated April 15, 2011, Rickard estimated

that Balthazar's tractor-trailer had been traveling for 33 seconds before being hit by Matheney's

vehicle. ECF No. 74-5 at 16. Sean A. Doyle ("Doyle"), a project engineer retained by Matheney

and Reinhart, opined in an expert report dated April 18, 2011, that Baltazar's tractor-trailer was

moving for no more than 20 seconds prior to the collision. ECF No. 64-2 at 6. Regardless of the

precise amount of time elapsing between Balthazar's entry onto the Turnpike and the accident, it is undisputed that the intervening period of time was very brief. Moreover, Balthazar's accelerating vehicle did not obstruct both westbound lanes of the Turnpike. Rickard testified that the tractor-trailer could not have impeded "the normal flow of traffic" on the Turnpike, since it occupied only the right lane and other vehicles remained free to utilize the left lane. ECF No. 98-12 at 16; Rickard Dep. at 123. The court notes that section 3364(b), which requires slow-moving vehicles to "drive completely off the roadway and onto the berm or shoulder of the highway" in certain instances, applies only to vehicles traveling on "a roadway having width for not more than one lane of traffic in each direction." 75 PA. CONS. STAT. § 3364(b). The applicable statutory language and judicial precedents do not support the conclusion that Balthazar violated section 3364 by slowly accelerating his tractor-trailer in a single lane of a two-lane highway. *Robbins*, 657 A.2d at 1004 (affirming a conviction under section 3364 where an individual had obstructed the travel of 18 to 20 vehicles by driving very slowly "through no-passing zones").

In his report, Rickard opined that it would be "inherently unsafe" for a driver in Balthazar's situation to accelerate to 50 mph on the shoulder of the Turnpike, in total darkness, "in order to return to the travel lanes at highway speed." ECF No. 74-5 at 20. The statutory proscription relied upon by Matheney and Reinhart does not apply "when reduced speed is necessary for safe operation or in compliance with law." 75 PA. CONS. STAT. § 3364(a). It is also worth noting that, under Pennsylvania law, a technical violation of a traffic regulation does not constitute negligence *per se* where the offending individual has a valid excuse for failing to comply with the regulation. *Bumbarger v. Kaminsky*, 457 A.2d 552, 180-183 (Pa.Super.Ct. 1983)(holding that a driver was not negligent *per se* in failing to stop at a stop sign while

traveling on a road that was rendered icy and hazardous by freezing rain). In light of Balthazar's need to defrost his windshield in dark conditions and safely return his tractor-trailer to the Turnpike, a reasonable trier of fact could certainly conclude that he acted reasonably under the circumstances of this case.

Since Balthazar and Werner withdrew their motion for partial summary judgment, the court has no occasion to consider whether they would otherwise be entitled to summary judgment with respect to the issue of negligence *per se*. ECF Nos. 101 ¶ 1; 103 ¶ 1. The motion for partial summary judgment filed by Matheney and Reinhart does not require consideration of Balthazar's conduct under ordinary principles of negligence law. No opinion is expressed about whether the blame for the accident lies with Balthazar or Matheney, or whether the crash was attributable to the negligence of both drivers. It suffices to note, on the basis of the existing record, that the court cannot conclude as a matter of law that Balthazar was negligent *per se*. The motion for partial summary judgment filed by Matheney and Reinhart (*ECF No. 65*) will be denied.

**B.      The Claims Against Keifer and YRC**

Keifer and YRC initially moved for summary judgment with respect to both the direct claims asserted by Matheney and the cross-claims asserted by Balthazar and Werner. ECF No. 88. The motion was partially mooted on September 16, 2011, when the court granted Matheney's motion for voluntary dismissal and dismissed his claims against Keifer and YRC. ECF No. 108. Since Balthazar and Werner did not withdraw their cross-claims, however, the motion for summary judgment filed by Keifer and YRC remains pending with respect to those claims.

In support of their motion for summary judgment, Keifer and YRC attack two separate elements of the cross-claims. First, they contend that the record is devoid of evidence permitting a reasonable trier of fact to conclude that Keifer operated his tractor-trailer in a negligent manner. ECF No. 89 at 7-13. Second, they argue that even if Keifer was negligent, no reasonable trier of fact could conclude that Matheney's injuries were caused or aggravated by the second collision. *Id.* at 13-16. These issues will be addressed in sequential order.

Keifer testified that he had no memory of the accident. ECF No. 90-10 at 3; Keifer Dep. at 12. The testimony concerning Keifer's inability to remember the crash is corroborated by the documentary record. ECF No. 111-5 at 12. Relying on *Kmetz v. Lochiatto*, 219 A.2d 588, 589-590 (Pa. 1966), and *Webb v. Martin*, 364 F.2d 229, 231 (3d Cir. 1996), Keifer and YRC argue that Keifer's inability to remember the circumstances of the accident entitles him to a rebuttable "presumption" that he "exercised due care and was not negligent." ECF No. 89 at 7. The language in *Kmetz* and *Webb* referenced by Keifer and YRC, however, is no longer good law in Pennsylvania. In *Marks v. Swayne*, 701 A.2d 224 (Pa. 1997), the Pennsylvania Supreme Court overruled its prior decisions establishing the presumption and declared that "juries should no longer be instructed as to a presumption of due care in favor of a deceased or incapacitated plaintiff." *Marks*, 701 A.2d at 226. The Pennsylvania Supreme Court explained that the presumption had been "interposed to require that a finding of contributory negligence, which was a complete bar to recovery, be based on evidence rather than the mere inference that due care was lacking." *Id.* The perceived "harshness of contributory negligence" was alleviated by the advent of "comparative negligence." *Id.* Pennsylvania law presently provides that while any recovery procured by a plaintiff "shall be diminished in proportion to the amount of negligence attributed to the plaintiff," "the fact that the plaintiff may have been guilty of contributory

negligence shall not bar a recovery by the plaintiff or his [or her] representative where such negligence was not greater than the causal negligence of the defendant or defendants against whom recovery is sought." 42 PA. CONS. STAT. § 7102(a). Given that a plaintiff's contributory negligence no longer forecloses his or her recovery of damages, the Pennsylvania Supreme Court determined in *Marks* that the "presumption of due care" previously enjoyed by deceased and incapacitated plaintiffs was no longer applicable in Pennsylvania. *Marks*, 701 A.2d at 226. Therefore, Keifer's incapacitation has no bearing on the viability of the cross-claims asserted by Balthazar and Werner.

At the time of the second collision, the Turnpike was completely dark, and the undersides of Reinhart's trailers contained no lighting or reflective tape. ECF No. 119 ¶¶ 11-12. Keifer testified that YRC's tractor-trailer was "governed" to move no faster than 62 mph. ECF No. 90-10 5; Keifer Dep. 14. This portion of Keifer's testimony is not disputed by the parties. ECF No. 119 ¶ 14. It is undisputed that Keifer's tractor was "hauling a fully-loaded trailer weighing between 25,000 and 30,000 pounds." *Id.* ¶ 13. Matheney, Balthazar and Warnick did not see the tractor-trailer driven by Keifer collide with Reinhart's trailer. *Id.* ¶ 20. When questioned about the accident, Matheney testified that he had no recollection about the second collision. ECF No. 111-2 at 49-50; Matheney Dep. at 115-16.

Given the lack of testimonial evidence from eyewitnesses, the parties rely primarily on expert reports supplied by project engineers. Michael A. Sutton ("Sutton"), an expert in accident reconstruction retained by Keifer and YRC, prepared a consultative report on March 16, 2011. ECF No. 94-1. In his report, Sutton opined:

> There is no physical evidence which shows the Matheney trailer would have been visible to Mr. Keifer for a time and distance sufficient for Mr. Keifer to perceive, react and bring his vehicle to a stop to avoid the collision. Furthermore, there is no physical evidence that the headlights of the Keifer vehicle would have

illuminated the Matheney trailer for a time and distance sufficient for Mr. Keifer to stop to avoid the collision.

ECF No. 94-1 at 7. Keifer and YRC rely on Sutton's report in support of their motion for summary judgment, contending that Keifer was not negligent at the time of the accident. ECF No. 89 at 11.

Other experts expressed different opinions about the incident. Doyle, a reconstructionist retained by Matheney and Reinhart, made the following observations in an expert report dated April 18, 2011:

> The distance at which operator Keifer was following the Matheney tractor-trailer is currently indeterminate. However, it is known that his vehicle had come to rest prior to driver Balthazar and trainer Warnick exiting their truck. If driver Keifer had been following at such a distance that the Matheney vehicle's lighting was discernible to him and he were attentive, he could have observed the collision ahead (sudden movement and disappearance of lights) and taken action to avoid the disabled vehicles.
>
> ***
> Had driver Keifer been following at a distance close enough to discern the Matheney tractor-trailer ahead, he should have observed evidence of the Balthazar collision and avoided the disabled Matheney trailer.

ECF No. 64-2 at 7-8. During a subsequent deposition, Rickard expressed disagreement with Doyle's conclusions. ECF No. 90-9 at 5-7; Rickard Dep. at 170-72. According to Rickard, it could not be presumed that Keifer acted negligently, since the distance between his vehicle and Matheney's second trailer could not be determined. ECF No. 90-9 at 5; Rickard Dep. at 170.

Dr. Mark Lee Edwards, a reconstructionist retained by Balthazar and Werner, generally attributed the accident to Matheney's negligence in companion reports dated April 15, 2011, and June 9, 2011. ECF No. 112-2 at 5; ECF No. 112-3 at 5. Dr. Edwards made the following statements about Keifer's conduct:

The lack of any evidence of a response on the part of Mr. Keifer to the situation as it involved [sic] in front of him is evidence that he too was not alert and attentive to the collision sequence in front of him, or that he was following so closely behind the tractor/double trailer combination Mr. Matheny [sic] was operating that there was insufficient time for him to respond assuming he was alert to the collision as it unfolded in front of him.

*Id.* When questioned about his report during a deposition, Dr. Edwards testified as follows:

Q.    And why is the lack of any evidence of a response by Mr. Keifer evidence that he was following too closely?

A.    Because studies of driver's probability of responding in a rear-end collision have consistently demonstrated that the vast majority of drivers leave some evidence of a response. So since there was no evidence of a response, it would indicate that one possibility would have been if he was following so closely there would not have been time enough to have left a response. So, for example, assuming that he was following Mr. Matheney's vehicle at about one and a half seconds, I would have not expected to find evidence of a response. So the lack of—because there wouldn't be time enough to leave evidence. So the lack of a response is evidence that he was either not alert and attentive or that he was following so closely behind that he didn't have time to leave evidence of a response. It could be one of those two things, and I have no basis for knowing which one it may have been since we don't have sufficient information about Mr. Keifer's vehicle to understand what was going on.

If I understood how fast he was going, perhaps if there were EDR on board and I had some evidence of deceleration, then I could be more specific. But the lack of a response is inconsistent with the behavior of an alert and attentive driver. Or the possibility that he was alert and attentive, but he was following so closely he didn't have time to respond.

ECF No. 107-3 at 2-3; Edwards Dep. at 7-8. Balthazar and Werner place significant reliance on

Dr. Edwards' report to buttress their cross-claims against Keifer and YRC. ECF No. 105 at 4-5.

Negligence on the part of Keifer cannot be inferred simply because the second collision

occurred. *Martin v. Evans*, 711 A.2d 458, 502 (Pa. 1998). To proceed with their cross-claims,

Balthazar and Werner must demonstrate, by a preponderance of the evidence, that Keifer

"engaged in conduct that deviated from the general standard of care expected under the

circumstances, and that this deviation proximately caused actual harm" to Matheney. *Id.*
Although negligence can sometimes be inferred from circumstantial evidence, a trier of fact is
not permitted to "speculate or guess" about whether a defendant breached his or her duty of care.
*Lanni v. Pa. R.R. Co.*, 88 A.2d 887, 889 (Pa. 1952). In other words, Balthazar and Werner
cannot proceed with their cross-claims simply by establishing a "mere possibility" that Keifer
was negligent. *Saldana v. Kmart Corp.*, 260 F.3d 228, 234 (3d Cir. 2001). Instead, they must
show that a reasonable trier of fact could reach the specific factual conclusions that they posit.
*Estate of Creek v. Mittal Steel USA, Inc.*, 629 F.Supp.2d 502, 509 (W.D.Pa. 2008). "In the
absence of direct proof as to the manner in which the accident occurred," the burden is on
Balthazar and Werner to "produce evidence of circumstances so strong as to preclude the
possibility" that Keifer's conduct was not negligent. *Houston v. Republican Athletic Ass'n*, 22
A.2d 715, 716 (Pa. 1941).

Pennsylvania law provides that "[n]o person shall drive a vehicle at a speed greater than
is reasonable and prudent under the conditions and having regard to the actual and potential
hazards then existing, nor at a speed greater than will permit the driver to bring his [or her]
vehicle to a stop within the assured clear distance ahead." 75 PA. CONS. STAT. § 3361. In
*Lockhart v. List*, 665 A.2d 1176, 1180 (Pa. 1995), the Pennsylvania Supreme Court explained
that "the assured clear distance ahead rule simply requires a driver to control the speed of his or
her vehicle so that he or she will be able to stop within the distance of whatever may reasonably
be expected to be within the driver's path." Although "the assured clear distance ahead rule
requires a motorist to be capable of bringing his or her vehicle to a stop within the distance that
he or she can clearly see," it is not "necessarily violated in every instance where a motorist is
unable to safely bring his or her vehicle to a stop." *Levey v. DeNardo*, 725 A.2d 733, 735 (Pa.

1999). Pennsylvania recognizes a "sudden emergency doctrine," which generally provides that "an individual will not be held to the 'usual degree of care' or be required to exercise his or her 'best judgment' when confronted with a sudden and unexpected position of peril created in whole or in part by someone other than the person claiming protection under the doctrine." *Lockhart*, 665 A.2d at 1180. This doctrine "recognizes that a driver who, although driving in a prudent manner, is confronted with a sudden or unexpected event which leaves little or no time to apprehend a situation and act accordingly should not be subject to liability because another perhaps more prudent course of action was available." *Id.* In other words, "a person confronted with a sudden and unforeseeable occurrence, because of the shortness of time in which to react, should not be held to the same standard of care as someone confronted with a foreseeable occurrence." *Id.*

Although Keifer and YRC vigorously argue that Keifer could not have anticipated the obstruction in the roadway caused by the first collision, the court finds that argument to be unpersuasive. ECF No. 89 at 8-13. An encounter with a stopped or disabled vehicle on a major highway, including a highway on which vehicles travel at the rate of 65 mph, "is by no means an uncommon experience." *Erie Ins. Exch. v. United States*, 115 F.Supp.2d 493, 495 (M.D.Pa. 2000). "It is an experience that any driver at any time must anticipate, whether the stopped vehicle is the result of an accident, road construction, a car stopped to permit an animal to cross, a snowstorm, intense rainfall, or any other such occasional roadway phenomenon." *Id.* Dr. Edwards attributed Keifer's alleged negligence not to the mere occurrence of the second collision, but to the lack of evidence suggesting that Keifer appropriately responded to the situation. ECF No. 107-3 at 2-3; Edwards Dep. at 7-8. While two alternative explanations were put forth by Dr. Edwards, either of those explanations, if believed by a trier of fact, would

warrant a finding that Keifer was negligent (*i.e.*, either by following Balthazar's tractor-trailer too closely to satisfy the requirements of section 3361, or by failing to remain "alert and attentive" enough to respond to the first collision). *Id.* Viewing the evidence in the light most favorable to Balthazar and Werner, the court proceeds on the assumption that Keifer's lack of response to the earlier accident exhibited negligent conduct on his part.

The inquiry, however, does not end upon a finding that a defendant breached his or her duty of care. A plaintiff seeking to advance a negligence claim must establish "a causal connection between the breach of duty and the resulting injury." *Eckroth*, 12 A.3d at 427. In order to do so, he or she must demonstrate that the breach in question was both the "actual" and "proximate" cause of the injury alleged. *Id.* A plaintiff can make a showing of actual causation simply by demonstrating that his or her injuries "would not have come about but for the negligent conduct" of the defendant. *E.J. Stewart, Inc. v. Aitken Prods., Inc.*, 607 F.Supp. 883, 889 (E.D.Pa. 1985). Proximate causation, on the other hand, cannot be established where "the causal chain of events" posited by the plaintiff is too remote to support a finding that the defendant's negligence was a "substantial factor" in bringing about the harm for which compensation is sought. *Dudley v. USX Corp.*, 606 A.2d 916, 923 (Pa.Super.Ct. 1992). A finding of *proximate* causation, unlike a finding of *actual* causation, cannot rest simply on the fact that a defendant's "negligent act [or omission] may be viewed, in retrospect, to have been one of the happenings in the series of events leading up to an injury." *Brown v. Phila. College of Osteopathic Med.*, 760 A.2d 863, 868 (Pa.Super.Ct. 2000). The issue of proximate causation generally centers on whether the injury sustained by the plaintiff "would have been foreseen by an ordinary person as the natural and probable outcome" of the defendant's negligence. *Reilly v. Tiergarten, Inc.*, 633 A.2d 208, 210 (Pa.Super.Ct. 1993). Proximate causation must ordinarily be

established before the question of actual causation is submitted to a jury. *Fetherolf v. Torosian*, 759 A.2d 391, 393 (Pa.Super.Ct. 2000). It is axiomatic that negligent conduct must be an actual cause of a plaintiff's injuries in order to be a proximate cause of those injuries. *Whitner v. Lojeski*, 263 A.2d 889, 457 (Pa. 1970)(remarking that "substantiality is not present if the harm would have been sustained irrespective of the negligent conduct").

On the basis of the existing record, Balthazar and Werner cannot establish that Matheney's injuries were actually or proximately caused by Keifer's negligence. As an initial matter, the parties differ about whether Dr. Edwards' findings would support a conclusion that Keifer could have stopped his tractor-trailer if he was not negligent. Assuming for the sake of argument that Keifer was not following Matheney's tractor-trailer too closely "to bring his vehicle to a stop within the assured clear distance ahead," but was instead not sufficiently "alert and attentive" to *react* to the first collision, it is not entirely clear whether the *reaction* that Dr. Edwards found to be lacking would have, in fact, *prevented* the second collision. Keifer and YRC persuasively argue that Dr. Edwards' report and testimony did not address the question whether the collision still would have occurred even if Keifer had taken some action to avoid it. ECF No. 112 at 5-7. In their brief, Balthazar and Werner cite page 17 of the transcript of Dr. Edwards' deposition testimony for the proposition that Keifer could have "achieved maximum brake force" if he had "perceived and reacted" to the first collision in a timely manner. ECF No. 105 at 4. Page 17 of the transcript, however, is not contained in their evidentiary submission. ECF Nos. 107-2 and 107-3; Edwards Dep. at 1, 7-8, 13-16, 18-20, 22-23, 30-32. Balthazar and Werner contend that the lack of evidence of a response calls Keifer's alertness and attentiveness "into question." ECF No. 105 at 5. Nonetheless, Balthazar and Werner cannot advance their cross-claims simply by showing that Keifer's negligence *may* have caused the second collision.

Instead, they must point to some evidence suggesting that an alert and attentive driver in Keifer's position *would* have prevented the collision. *Martin v. United States*, 934 F.Supp. 159, 163-64 (E.D.Pa. 1996). As far as causation is concerned, it is not enough for Balthazar and Werner to demonstrate that Keifer "failed to take any evasive action to avoid the collision." ECF No. 105 at 5. They must make the additional showing that such "evasive action" would have actually *avoided the collision*. *Martin*, 934 F.Supp. at 163-64. A plaintiff cannot defeat a motion for summary judgment simply by showing that a direct causal link between the defendant's negligence and the injuries for which redress is sought is one of "several equally plausible possibilities." *Galullo v. Federal Express Corp.*, 937 F.Supp. 392, 397-98 (E.D.Pa. 1996). Given that Balthazar and Werner cannot establish more than a "mere possibility" of causation, Keifer and YRC are entitled to summary judgment even if it is assumed that Keifer was negligent.[7] *Saldana*, 260 F.3d at 234.

If Balthazar and Werner could show that Keifer's negligence *caused* the second collision, their cross-claims would still fail for the reason that they cannot demonstrate that the second collision caused *Matheney's injuries*. The cross-claims asserted by Balthazar and Werner derive entirely from Matheney's request for compensation. ECF No. 8 ¶¶ 30-31. Matheney testified that he could not recall feeling an impact from the second collision. ECF No. 11-2 at 49; Matheney Dep. at 115. Keifer stated that he could not remember anything about the accident. ECF No. 90-10 at 3; Keifer Dep. at 12. Warnick explained that he was unaware of the second collision at the time of impact. ECF No. 98-8 at 25; Warnick Dep. at 98. Sutton opined in his report that the second trailer hauled by Matheney was disconnected from Reinhart's tractor after the first collision, and that the second collision did not cause or exacerbate Matheney's injuries.

---

[7] In light of this determination, there is no need for the court to consider the evidentiary objection to Dr. Edwards' testimony raised by Keifer and YRC. ECF No. 112 at 3-5.

ECF No. 94-1 at 6. Doyle later testified that he agreed with Sutton's assessment. ECF No. 90-7 at 14, 17; Doyle Dep. at 162, 182. Keifer and YRC argue that the cross-claims filed by Balthazar and Werner must be dismissed on the ground that Matheney's injuries were caused solely by the first collision, and that they were not attributable to the second collision in any way. ECF No. 89 at 13-16; ECF No. 112 at 7-8. Matheney's claims against Keifer and YRC, of course, were already dismissed at Matheney's request. ECF Nos. 102 & 108.

Corporal David P. Fries ("Fries") investigated the accident on April 23, 2008. ECF No. 121-1 at 1; Fries Aff. ¶ 1. When questioned about the investigation on October 4, 2010, Fries testified:

> Q. Do you know at what point in time the second trailer disconnected from the first trailer?
>
> A. No.
>
> Q. Is there any physical evidence that you are aware of that suggest [sic] to you a point in time at which Trailer No. 2 disconnected from Trailer No. 1?
>
> A. After impact by Unit No. 3.
>
> Q. What is the physical evidence that suggests to you that Trailer No. 2 disconnected after impact by Vehicle No. 3?
>
> A. The tow dolly was still connected behind trailer No. 1. This is my personal opinion, but I don't think the rotation was enough to shatter the trailer without it having been impacted.

ECF No. 107-1 at 5; Fries Dep. at 62.[8] In response to subsequent questioning, Fries opined that Matheney's second trailer became disconnected from the first trailer after being "shattered" by the force of Keifer's tractor. ECF No. 107-1 at 6-7; Fries Dep. at 63-64. Balthazar and Werner

---

[8] The PSP's crash report referred to Matheney's tractor-trailer as Unit No. 1, Balthazar's tractor-trailer as Unit No. 2, and Keifer's tractor-trailer as Unit No. 3. ECF No. 111-2 at 2; ECF No. 111-3 at 25.

rely on Fries' testimony as a basis for arguing that Matheney's injuries were caused or aggravated by the second collision.  ECF No. 105 at 5-6.

In a subsequent affidavit, Fries repudiated his prior testimony and expressed agreement with the opinions expressed by Sutton and Doyle.  ECF No. 121-1at 2; Fries Aff. ¶¶ 8-9.  He declared that he was not asked to prepare an opinion concerning the subject of the disconnection prior to the deposition, and that he was later convinced that Sutton and Doyle were correct after reviewing post-accident photographs of Matheney's tractor.  ECF No. 121-1 at 2; Fries Aff. ¶ 7. In light of Fries' "satisfactory explanation" about why his affidavit contradicted his prior deposition testimony, there is no reason for the court to disregard the affidavit.  *Jiminez v. All American Rathskeller, Inc.*, 503 F.3d 247, 254 (3d Cir. 2007).  It is worth noting that Fries responded in the negative when asked during his deposition whether he knew when Matheney's second tractor became disconnected from the first trailer.  ECF No. 107-1 at 5; Fries Dep. at 62. In this respect, the statements contained in Fries' affidavit were not inherently in conflict with his earlier deposition testimony.  Given that no competent evidence supports the contention that the second collision caused or exacerbated Matheney's injuries, the motion for summary judgment filed by Keifer and YRC will be granted.

## C.  The Direct Liability Claims Against Reinhart

Under Pennsylvania law, an employer is vicariously liable for injuries resulting from the negligent acts of an employee committed within the scope of his or her employment.  *Costa v. Roxborough Mem'l Hos.*, 708 A.2d 490, 493 (Pa.Super.Ct. 1998).  Vicarious liability extends to both compensatory and punitive damages.  *Shiner v. Moriarty*, 706 A.2d 1228, 1240 (Pa.Super.Ct. 1998).  It is undisputed that, at the time of the accident, Matheney was acting within the scope of his employment with Reinhart.  ECF No. 117 ¶ 2.

The Keifers assert claims against Reinhart on a theory of vicarious liability. 09-CV-1187, ECF No. 1 ¶ 12. In addition, they contend that Reinhart is directly liable for Keifer's injuries because of its "negligence in failing to train, monitor and supervise" Matheney. *Id.* Reinhart moves for summary judgment with respect to the direct liability claims asserted by the Keifers. ECF No. 91.

A claim for "negligent entrustment" cannot succeed without a showing that the employer's employee (*i.e.*, the entrustor's entrustee) caused injury to a third party by engaging in tortious conduct. *Gaines v. Krawczyk*, 354 F.Supp.2d 573, 580 n.1 (W.D.Pa. 2004). Although the employer is liable only where the employee engages in tortious conduct, the employer's liability is not imputed from the liability of the employee. *Eugenia v. Fisher*, 709 A.2d 399, 403 (Pa.Super.Ct. 1998). In some jurisdictions, a direct negligent entrustment claim stemming from an employer's failure to exercise due care in supervising the driver of a tractor-trailer cannot coexist with an indirect claim based on a theory of vicarious liability unless the direct claim can lead to an additional monetary award. *See Scroggins v. Yellow Freight Sys., Inc.*, 98 F.Supp.2d 928, 931 (E.D.Tenn. 2000)(applying Georgia law). This rule of preclusion is based on the understanding that the availability of an indirect claim grounded in vicarious liability renders the direct claim superfluous, since the direct claim fails when it is necessary and is unnecessary when it succeeds. *Id.*

Although an employer's vicarious liability for the torts committed by its employees may preclude a plaintiff from asserting a direct claim against the employer in some jurisdictions, that rule does not appear to be applicable in Pennsylvania. *Burke v. TransAm Trucking, Inc.*, 605 F.Supp.2d 647, 658 (M.D.Pa. 2009). Pennsylvania's Comparative Negligence Act provides that, "[i]n all actions brought to recover damages for negligence resulting in death or injury to person

or property, the fact that the plaintiff may have been guilty of contributory negligence shall not bar a recovery by the plaintiff . . . where such negligence was not greater than the causal negligence of the *defendant or defendants against whom recovery is sought*, but any damages sustained by the plaintiff shall be diminished in proportion to the amount of negligence attributed to the plaintiff." 42 PA. CONS. STAT. § 7102(a)(emphasis added). The Pennsylvania Supreme Court has construed this statutory language to mean that a plaintiff's contributory negligence must be compared with "the cumulative negligence of all defendants" against whom recovery is sought. *Thomas v. Duquesne Light Co.*, 595 A.2d 56, 59 (Pa. 1991). In *Christiansen v. Silfies*, 667 A.2d 396, 399-401 (Pa.Super.Ct. 1995), the Pennsylvania Superior Court held that the contributory negligence of a plaintiff proceeding with vicarious liability claims and negligent entrustment claims must be weighed against the combined negligence of the offending employee and employer. While recognizing that the "prejudicial nature" of the evidence pertaining to negligent entrustment justified "bifurcating the liability phases" of the litigation, the superior court declared that the comparison of the defendants' "causal negligence" to that of the plaintiff needed to be "accomplished simultaneously." *Christiansen*, 667 A.2d at 399. At least where negligent conduct is at issue, the holding in *Christiansen* compels the conclusion that the availability of indirect claims premised on a theory of vicarious liability does not warrant the dismissal of a plaintiff's companion claims for negligent entrustment.[9]

The primary basis for Reinhart's motion for partial summary judgment appears to be the Keifers' failure to present expert testimony concerning the duty of care owed by Reinhart in

---

[9] An employer can be held vicariously liable for an intentional tort committed by its employee within the scope of his or her employment. *Valles v. Albert Einstein Med. Ctr.*, 805 A.2d 1232, 1237 (Pa. 2002)(observing that "[a] master may be vicariously liable even in the case of assaults committed by the servant"). In this case, however, the Keifers do not allege that Matheney committed an intentional tort. Therefore, the court has no occasion to consider whether an employer's uncontested vicarious liability for an employee's intentional conduct would warrant the dismissal of a plaintiff's companion negligent entrustment claims.

relation to Matheney's operation of the tractor-trailer. ECF No. 92 at 4-6; ECF No. 115 at 2-7. The Keifers contend that no expert testimony is needed to establish Reinhart's negligence in this case. ECF No. 111 at 10-13. Where state law requires the presentation of expert testimony in order to establish an element of the plaintiff's cause of action, that requirement must be treated as a "substantive" part of state law and applied by a federal court sitting in diversity. *Chamberlain v. Giampapa*, 210 F.3d 154, 158-61 (3d Cir. 2000). Under Pennsylvania law, however, "there is no need for the testimony of an expert" under circumstances where all "primary facts" can be accurately described to a jury, and where the members of the jury are "as capable of comprehending such facts and drawing conclusions from them as are witnesses possessed of special training, experience or observation." *Reardon v. Meehan*, 227 A.2d 667, 670 (Pa. 1967). The dispositive question is whether the Keifers can proceed with their negligent entrustment claims against Reinhart without presenting expert testimony.

The Keifers' claims are based on Reinhart's alleged failure to comply with its own internal policies[10] and regulations promulgated by the Federal Motor Carrier Safety Administration ("FMCSA") pertaining to the oversight of tractor-trailer drivers. ECF No. 111 at 6-10. In *Christiansen*, the superior court held that expert testimony relating to the requirements of the FMCSA's regulations and Pennsylvania's Motor Vehicle Code had been properly excluded on the ground that such matters were beyond the scope of the proposed witness' expertise. *Christiansen*, 667 A.2d at 403-04. The superior court stated that "it would have been proper to have a qualified expert describe" the "applicable standard of care" had one been available. *Id.* at 404. Nothing in *Christiansen*, however, suggests that a negligent entrustment

---

[10] The Keifers' arguments concerning Reinhart's internal policies are somewhat vague. ECF No. 111 at 16. The Keifers apparently believe that Reinhart was negligent in failing to follow its policy of providing drivers with "refresher" courses on an annual basis. *Id.* at 9. Reinhart's own policies, however, do not necessarily represent the standard of care applicable to a cause of action for negligence. *Piskorski v. Ron Tonkin Toyota, Inc.*, 41 P.3d 1088, 1091-92 (Or.Ct.App. 2002).

claim cannot proceed in this situation without the introduction of expert testimony. Reinhart

fails to identify authority supporting its position that the Keifers must supply expert testimony in

order to advance their negligent entrustment claims. ECF No. 92 at 4-6; ECF No. 115 at 2-7.

The court is not convinced that Reinhart's alleged failure to monitor Matheney's behavior

implicates matters requiring the presentation of expert testimony. *Glover v. Transcor America,

Inc.*, 57 F.Supp.2d 1240, 1249 (D.Wyo. 1999)(holding that a jury could find that an employer's

rules would result in "driver fatigue" without hearing expert testimony). Consequently, the

Keifers' negligent entrustment claims cannot be dismissed solely because no expert provided

testimony concerning Reinhart's duty of care.

The applicable federal regulations prohibit the driver of a commercial motor vehicle from

using radar detectors, proscribe the operation of a commercial motor vehicle by someone who is

too ill or fatigued to drive safely, limit the amount of time that an individual can spend operating

a commercial motor vehicle without resting, and require drivers to comply with all relevant

traffic regulations. 49 C.F.R. §§ 391.25, 392.2, 392.3, 392.71, 395.3. Shortly after the accident,

Matheney paid a fine for carrying a radar detector while operating a commercial motor vehicle.[11]

ECF No. 111-2 at 51; Matheney Dep. at 126. He testified that the radar detector was not in use

at the time of the accident. *Id.* On March 18, 2008, Matheney was cited in Ohio for operating a

commercial motor vehicle while ill or fatigued. ECF No. 111-3 at 8-11. This citation, of course,

was issued a little more than one month before the accident at issue in this case. Federal

regulations limit the amount of time that a driver can operate a commercial motor vehicle to sixty

hours over the course of seven consecutive days or seventy hours over the course of eight

consecutive days, depending on whether the employing entity operates commercial motor

---

[11] Radar detectors are prohibited because they enable drivers to detect attempts by police officers to monitor the
speed of their vehicles. ECF No. 111-2 at 24.

vehicles every day of the week.  49 C.F.R. § 395.3(b)(1)-(2).  Reinhart's internal driver logs

indicate that Matheney exceeded these limitations just two weeks before the crash.  ECF No.

111-3 at 4-6.  Allan Daley ("Daley"), Matheney's trainer, testified that Matheney may have

logged out improperly, thereby causing his driving time to be overstated.  ECF No. 111-4 at 34-

35; Daley Dep. at 100-01.  When questioned about the matter, however, Matheney stated that

nobody affiliated with Reinhart spoke with him about the excess hours.[12]  ECF No. 111-2 at 34-

36; Matheney Dep. at 73-75.

The existence of a duty of care owed by an alleged tortfeasor is a question of law that

turns on "amorphous public policy considerations."  *Althaus v. Cohen*, 756 A.2d 1166, 1169 (Pa.

2000).  The court does not understand Reinhart to argue that it had no duty to ensure that its

vehicles were being safely operated.  Reinhart intimates that it fulfilled whatever duty of care

was owed to Keifer under the circumstances of this case.  ECF No. 115 at 7.  Nevertheless, the

record contains evidence suggesting that, shortly before the accident, Reinhart remained silent

while Matheney exceeded the driving limitations applicable under federal law and operated a

tractor-trailer in a fatigued state.  The Pennsylvania courts have declared that "where there is

doubt as to the inference to be drawn from the facts, or where the measure of duty is ordinary

and reasonable care, and the degree of care required varies with the circumstances, the question

of negligence is necessarily for the jury."  *Stebner v. Young Men's Christian Ass'n*, 238 A.2d 19,

22 (Pa. 1968); *Cohen v. Phila. & Reading R.R. Co.*, 60 A. 729, 730 (Pa. 1905); *LeGrand v.

Lincoln Lines, Inc.*, 384 A.2d 955, 957 (Pa.Super.Ct. 1978).  Since neither Reinhart's vicarious

liability for Matheney's negligence nor the Keifers' failure to produce expert testimony

---

[12] Reinhart is apparently unable to produce the driver logs for the period of time immediately preceding the accident. ECF No. 111 at 7 n.3.

concerning Reinhart's duty of care justifies the dismissal of the Keifers' negligent entrustment claims, the court will deny the motion for partial summary judgment filed by Reinhart.

## V.     Conclusion

The evidentiary record does not support the conclusion posited by Matheney and Reinhart that Balthazar was negligent *per se* in operating his tractor-trailer below 50 mph on the Turnpike.  For this reason, the motion for partial summary judgment filed by Matheney and Reinhart (*ECF No. 65*) will be denied.  Even if Keifer was negligent at the time of the accident, the existing record does not support a finding that greater care on his part would have prevented the second collision, or that Matheney's injuries were caused or aggravated by the second collision.  Consequently, the motion for summary judgment filed by Keifer and YRC (*ECF No. 88*) will be granted.  Under Pennsylvania law, an employer's vicarious liability for the negligent conduct of its employee does not preclude an injured party from asserting a companion claim for negligent entrustment.  *Christiansen*, 667 A.2d at 399-400.  The duty of care owed by an employer in relation to the dangers to motorists posed by fatigued drivers need not be established by means of expert testimony.  *Glover*, 57 F.Supp.2d at 1249.  Accordingly, Reinhart's motion for partial summary judgment (*ECF No. 91*) will be denied.  An appropriate order follows.

The remaining claims before the court include: (1) the Keifers'  negligence claim against Balthazar; (2) the Keifers' vicarious liability claim against Werner; (3) the Keifers' negligence claim against Matheney; (4) the Keifers' vicarious liability claim against Reinhart; (5) the Keifers' negligent entrustment claim against Reinhart; (6) Matheney's negligence claim against Balthazar; (7) Matheney's vicarious liability claim against Werner; (8) the cross-claims for contribution or indemnity asserted by Balthazar and Werner against Matheney and Reinhart; (9) the cross-claims for contribution and/or indemnity asserted by Matheney and Reinhart against

Balthazar and Werner; and (10) YRC's intervenor claims against Balthazar, Werner, Matheney and Reinhart.

By the court:


/s/ JOY FLOWERS CONTI
Joy Flowers Conti
United States District Judge

Dated:  February 1, 2012